Welcome to the Fifth Circuit Court of Appeals. As you can see, we have Judge Graves here on the monitor. Judge, can you see something, hear something? Can you hear me? You may be muted. I cannot hear you. I see your lips moving. Still can't hear you. I don't see the microphone with the slash through it. Well, no, actually I do see a microphone with a slash through it in the lower right-hand corner of your monitor. Can you see that on your screen? That's just what I see. We're having technical difficulties, so we'll just wait a second. What should we do? Okay, we're going to get this fixed. Don't worry. Just talk amongst yourselves here. No, actually, don't talk here. We're in court. Thank you. Thank you. Thank you.   Oh, I can hear you. You can hear me now? I can hear you now. Yes.  All right, let's proceed. Let's rock and roll. I am the backup presiding judge today, which is no doubt why we're having all these problems, but welcome. And with that, we have two cases on the docket this morning, and I will call the first one, number 24-11077, United States of America v. Lopez Soria, Ms. Vega. Welcome. Good morning. Good morning, Your Honor. And may it please the court, the district court selected a sentence from Mr. Lopez Soria's illegal reentry offense based on clearly erroneous facts. At the time of sentencing, the district court believed the facts to show removal, reentry, criminal conduct. Removal, reentry, criminal conduct. Removal, reentry, criminal conduct. The district court got it wrong. Mr. Lopez Soria had two removals, not the three that were mentioned. And the district court stated twice, after each time that Mr. Lopez Soria returned to the United States, he had engaged in additional criminal conduct apart from the illegal reentry itself. The facts show that between removals one and two, which were the only two removals in Mr. Lopez Soria's history, there was only one criminal conviction for the illegal reentry itself. Now the district court repeatedly referenced these facts in its sentencing justification, but there was no objection. So we are on plain error here. Problems one and two of plain error being whether there was error and whether the error was clear or obvious are left largely uncontested by the government in its briefing. So I will focus on problem three, the effect on substantial rights. Before continuing, I did want to pause to see if the court had any questions it wanted me to address at this time. No, please proceed. Thank you, Your Honor. So because we are on plain error, we bear the burden to show the effect on substantial rights, and that burden is a reasonable probability of a lesser sentence on remand. I want to stress reasonable probability. This is not a burden to show that more likely than not there would be a lesser sentence, but rather that there is a reasonable probability of one. Now the cases discussing prejudice that results from clearly erroneous factual findings that are factored into a sentence are varied and are disparate, and that's to be expected given that this is a very fact-intensive and record-specific inquiry. But three considerations can be drawn from the cases that can help guide the analysis for this case. The first one is how many times did the district court reference the erroneous fact? The second consideration is how did the court's treatment of those erroneous facts compare to the other facts that were also in the sentencing mix, if you will? And the third one is the nature of the error. In the context of the crime for which the defendant is being sentenced, is this the type of error that is likely to influence the sentence for that crime? On all three of these, Mr. Locosilla can make a showing of prejudice. With respect to the first one, which is how many times were the erroneous facts referenced? The district court stated explicitly that it was anchoring its sentence at the top of the guidelines because of three 3553 factors that it deemed aggregate. And then it actually later disclaimed reliance on the guidelines. So that really starts to elevate these factors' importance when it comes to Mr. Locosilla's assignment. The first factor that was addressed was 3553A1, and the very first fact that the district court cited with respect to 3553A1 was the erroneous fact of three removals. With respect to the second factor, 3553A2A. Well, where did the district court say that the defendant sort of, what was the phrase, disrespected the sovereignty of the United States? Did not respect the sovereignty of the United States. I believe that was, it's on record 144, and it's with respect to 3553A1, Your Honor. But that was noted after the three prior ones. Okay, so how many times was he removed? How many times was he removed? He was removed twice. So the district court said he doesn't respect the sovereignty of the United States, and the idea is the district court said he was removed three times, but he was actually removed twice. Yes, Your Honor. Okay, so why isn't it accurate to say that your client, with all due respect, doesn't respect the sovereignty of the United States since he's illegally reentered twice? Well, Your Honor, I'm not disputing that there were other facts that were in consideration, and I'm also not disputing that two removals may lead the district court to that conclusion, but the district court did not say two removals. The district court said three removals, and we have to take the district court at its word here. So the idea is, oh, well, if the district court had realized it was only two illegal reentry convictions and not three, the district court would say, oh, I'm sorry. I'm going to give you a lower sentence because it was only two, not three. Well, again, the burden is the reasonable probability, and I think that... Why should I think that there's a probability? Why should I think there's a reasonable probability of that? Well, Your Honor, it's important to consider the sentencing in context, and what I was going to address is, with respect to 3583A2A, the last fact that was mentioned by the district court was the, quote, each time, the erroneous fact that each time that Mr. Lopez-Savillia returned, that he committed additional crimes. That is the only fact with respect to that factor, and, in fact, in the entire case... So he returned twice and not three times? Correct. That's not the... Okay, so did he commit crimes after two times of returning? You're just saying he didn't commit crimes three times? No, he did not commit crimes... How many times did he commit crimes after he returned to the United States? Only the one time. So he did commit crimes after returning to the United States? He did commit crimes, yes, but the district court did not say that he committed crimes and leave it at that. The district court said each time, and it said it twice. So saying each time twice is enough on plain error review to vacate the sentence and send it back for resentencing? Just that? No, because the district court also got wrong the number of removals and it cited the each time factor after emphasizing, quote, even more concerning. And then with respect to the last factor, which is the protection of the public factor, the only two facts that the district court cited was repeatedly re-entering... He did? Did he not repeatedly re-enter? Correct. In the context of the sentencing, I think that refers to the erroneous fact of three removals. But in that counsel, in that connection, how many times did the district court mention the erroneous number? I know he referred to each, but in terms of the erroneous number three, how many times did he actually mention the erroneous number of removal? Once. One time? Correct. But the district court made two erroneous factual findings. And those erroneous factual findings were mentioned four times by the district court. And with respect to the protection of the public, the only two facts that were cited were the repeated re-entries and the erroneous fact of, quote, each time. So I want to go towards the first two considerations that I said could help guide the discussion in this case. And the government counters, right, that the only facts weren't the clearly erroneous facts. That's true, but the case law does not require that the clearly erroneous facts be the only facts. What's your best case that an error of this nature should lead on plain error review to the vacatur of a sentence? Well, I have three cases that I want to bring to the court's attention. Two are out of circuit and one is in circuit. Well, let's start with the in-circuit case. Yes, Your Honor. So United States v. Ibaga is an in-circuit case where the guideline range is a drug case. The guideline range was 108 to 135. I delved into the briefing for that case in order to present the full picture of the case to the court today. The district court varied downward from the bottom just three months to give credit to the defendant's conduct on pretrial release. And it did not go further, which was the 72 months, because of a belief that the defendant had manufactured drugs and had ruined lives, when the evidence did not show that there was an end user or that there was any manufacturing. So let me see. The district court varied downward but misunderstood. He thought the defendant was manufacturing drugs? The error was that the district court did not vary to the extent that was requested. Okay. So it didn't vary downward enough because he thought the defendant had manufactured drugs? And that there was an end user. Okay. But, in fact, the defendant had not manufactured drugs? The evidence didn't show that. Okay. Correct. Was that a plain error case? That's a plain error case, Your Honor. And, in fact, that plain error case cited preserved cases to illustrate the prejudice that resulted. There, a component of the sentence that said the downward variance was based on clearly erroneous facts. We have the same thing here. We have a component of the sentence, 3553A2C, protection of the public factor, only one of the three factors that were cited. And there, the only facts that were cited were the clearly erroneous facts. I also want to. . . Again, when you say clearly erroneous facts, you mean he illegally reentered two times and not three? In the context of the sentencing, I believe when the district court stated that he repeatedly reentered, the district court had in mind the three. How do you know that? How do you know that? The district court in his mind was thinking, wow, it's three times. Because. . . If it had only been two, I'd give him a lower sentence. The district court said three times. That's how I know that the district court had in mind three times. And, again, it's a reasonable probability, and it is important to consider the erroneous facts as a whole. This isn't a single misstatement. And that's the big point of departure from these cases and the cases that the government cited. So, within circuit, it's United States v. Garcia-Servin, Hernández Domínguez, and Sanza-Cruz. So, Garcia-Servin, that's. . .  Let's see. I've got a note about Garcia-Servin. So, let's see. District court in Garcia-Servin. Well, tell me why that helps you. Well, I just wanted to point out to the court that the case is very distinct when it comes to the problem-free analysis because there was one error, and it was mentioned once. Here we have multiple errors mentioned multiple times. So, that's the first point of departure that I want to note. Was Garcia-Servin a plain error case? It is a plain error case. The second point of departure that I want to note is the second consideration being the treatment of the erroneous facts versus the other facts. That's what I'm saying. Again, I delved into the briefing for this case to present the full picture to the court today, and the district court below had mentioned that the defendant was a, quote, without even being a citizen. The panel openly incited that the concern was the drug and conviction offenses. We don't have a similar statement here. Instead, the repeated emphasis is the, quote, even more concerning fact that the defendant had committed crimes each time that he reentered in the district court. Again, it was erroneously under the belief that he had engaged in that conduct three times. Excuse me. Hernandez-Omigas is another case that I wanted to distinguish today, and that one, again, had a CEQA reference to a miscounted removal. There, the defendant had an 11-year history of reoffending, and the district court accurately recounted the removals, but mistakenly believed that there was one prior to 2006, which was the first removal. There, again, there's a significant departure. It was mentioned once. Here, we have actually a five-year history, a five-year period. From the first removal, which was in 2018, until the end of the illegal reentry offense, we're in 2025 now, but that illegal reentry offense actually ended in 2023. So, we only have a five-year history, and that shortened time period becomes even more relevant because the district court got it wrong in terms of how many times there was actually reoffending. And then, lastly, Salazar-Proa is also distinguishable. The panel opinion there noted that the erroneous fact was mentioned, quote, in passing. Again, we have repeated emphasis here. And then, in Salazar-Proa, the defendant had a history of five illegal reentry convictions. There's a difference between somebody who has one illegal reentry conviction and someone who has five when the sentence, the crime for which they're being sentenced, is illegal reentry. The government also cites Fernando Reynosa, which is out of the Eighth Circuit. That one is very similar to Garcia-Servan. Again, in Fernando Reynosa, the other criminal conduct had to do with DWI, and the district court noted that the defendant had, quote, a terrible history of driving while intoxicated and noted, quote, endangered pedestrians and other drivers on South Dakota's highways. We don't have that kind of overarching conclusory statement by the district court here. If anything, what the district court, by its own words, stated was even more concerning was the pattern of criminal conduct after each time that Mr. Lopez-Soria had returned. And we know that the district court got it wrong there on both points. So Mr. Lopez-Soria was first removed in 2018? Correct. How many crimes did he commit in the United States before he was first removed? I believe he had a two possession with intent to distribute convictions. Possession of intent to distribute what? I'm sorry. Two drug possession convictions, I believe. Possession of what?  I don't know the drugs off the top of my head. Okay. So two possession with intent to distribute drugs. What else? I want to make sure that I'm stating it correctly, Your Honor. He might have just had drug possession, not possession. Yes. I'm sorry. He had just drug possession, not possession with intent to distribute. Okay. And the drug that was involved was cocaine in one. And it was, I think it might have been cocaine in the other one as well. Okay. So cocaine. But that was before the removal in 2018. The district court was obviously focused on, given, again, his repeated emphasis on what happened after he was removed. Right. So after he was removed in 2020, second removal? Correct. Okay. After his second removal, did he do any crimes? Well, he was found after being arrested for failure to identify and possession of a controlled substance. Okay. Yes, he was. Okay. Well, thank you. You saved time for rebuttal. Let's see. Mr. Myatt, is it? Good morning. May I proceed? May it please the court. Matthew Myatt on behalf of the United States. This court should affirm Lopez-Oria's within-guideline sentence because he cannot prove any reversible claim error. After Lopez-Oria pled guilty to illegal reentry, the district court emphasized two main facts in selecting the sentence. First, that Lopez-Oria had been convicted and sentenced for the same crime years prior. And second, that he had amassed a lengthy criminal history while present in the United States, placing him in the highest criminal history category. Based on these facts… Can you just give us sort of a bird's-eye view of his lengthy criminal history? Absolutely, Your Honor. So just to clarify, before his first removal in 2018, his adult convictions, he had a prior conviction for possession of a controlled substance, which is cocaine, a second possession of a controlled substance offense. That one is unspecified. He also pled guilty to fraudulently possessing Social Security cards of a victim. And then he also pled guilty for escape after an arrest for a separate offense. And then he was removed in 2018. He came back in 2019. He was removed again in 2020. And when he returned to this country, he was arrested and convicted for another possession of a controlled substance offense. That time it was meth. And for a failure to identify, giving a false name and a false date of birth.  And so based on… Let me ask Jeff Lemonaire a question. Why isn't it an improper sentencing factor to say, I'm going to hit you harder because you don't respect the sovereignty of the United States? Why isn't that an improper sentencing factor? I know she didn't argue that, but that seems to me to be… That every person who's in court is… Even if they have the crazy idea of not respecting sovereignty, they're still entitled to due process and all the rights of a person in court. Certainly, Your Honor. And the government does not contest Lopez-Soria's entitlement to sufficient due process in this case. But I think the 3553A factors contemplate this exact type of justification. Where the court can consider or respect the law, the need to promote adequate deterrence and to protect the public. And when a defendant lacks respect for the sovereignty of a country, and lacks respect for the laws of that country, I think that's fair game for a district court to base its sentence off of. And here… Isn't the district court referring to illegal reentry? With respect to not respecting the sovereignty, like not respecting the sovereign borders of the United States? Right? I believe so, yes, Your Honor. And it mentioned that fact, as you brought up earlier, that fact twice. One on page 144 of the record, and 145 of the record. And I think it's important to note that that finding was specifically tied to its illegal reentry offense, or Lopez-Soria's conviction, and the district court's exact words were… Well, nevertheless, you must… I hope you'll agree that this judge had false facts in his mind during the sentencing. I'm not quite sure the record bears that out, Your Honor. In context, the district court referenced a specific number of the PSR. It was referencing and adopted the PSR in full, which contained the correct facts. So I think this may be an instance in which there was just a slip of the tongue, but that being said, this case is more easily resolved on the third prong of plain error reviews. That's where the government has focused its brief. And with that, Lopez-Soria cannot establish any error affecting his substantial rights. And that's because the district court's single passing reference to the number of removals when it stated three instead of two, and its imprecise use of the phrase each time when describing the timing of Lopez-Soria's criminal history that was otherwise properly accounted for, these were just minor technical misstatements among various other considerations that the court gave. These are minor or what? What do you call it, minor errors? I think just a technical mistake. But they were errors, and they were false facts. And if they influenced the sentencing, that's wrong. Your Honor, I think the case law is clear that for Lopez-Soria in this instance to satisfy plain error, he must establish that the mistaken facts were central to his sentence, and not every mistaken fact mentioned by a district court will qualify as central, especially in the plain error context. In fact, this court has held on multiple occasions that where a district court cites other valid factors at sentencing, it has had no trouble finding harmlessness. A good example is United States v. Williams, where this court found that a district court's reliance on a bare arrest record was harmless because it was made in conjunction with other factors. Another good example is the case that the government cited in its most recent 28J letter, Amaya Argueta, where this court again found harmlessness, where a district court stated that the defendant had repeatedly reentered the country and repeatedly committed crimes when neither of those things were true. And again, it was the homelessness finding was couched in the fact that there were other valid factors that were mentioned at sentencing. In that case, it was focusing on the instant illegal reentry offense. And I do want to address… To be clear, the error, if there was one, was that he reentered the country illegally twice instead of three times. Correct, Your Honor. And there's also an alleged error with respect to whether he committed crimes each time he reentered. And the alleged error is that there was how long a period where maybe he didn't commit a crime after illegally reentering? I believe that time was about 10 months or less, since we're not quite sure when he came back. Okay. And to Your Honor's point, it is undisputed here that Lopez Soria committed multiple crimes before his first removal and multiple crimes after his second removal. The fact that there was a brief period of time, about 10 months or less, sandwiched in between this lengthy criminal history does not undermine the district court's ultimate conclusion that he was not a law-abiding person. In fact, he was a habitual offender that amassed a criminal record that placed him in the highest criminal history category. Lopez Soria also attempts to distinguish this court's decision in Garcia-Servin by arguing that the district court there merely made just one misstatement and somehow that case is now unhelpful. But that was actually not an accurate reading of the case. As the briefs in that case explain, the district court there mentioned the misstatement fact at length on three distinct occasions, in the defense's argument and mitigation, during the defendant's elocution, and again, in justifying its upward variance. Do you recall the nature of the error that the district court relied on in Garcia-Servin? Yes, that was a mistaken, exactly like here, Your Honor, a mistaken number of removals, two versus three. And the district court in Garcia-Servin also doubled down on its erroneous interpretation when later pushed back by the parties. And what these facts show— Wait, you mean there was an objection in Garcia-Servin? It was—this court found that it wasn't preserved, but it gave—it found that it was not—it was reviewed on plain error, but there was an argument that it was preserved. But what's important here is that these facts were arguably even more influential to the district court in Garcia-Servin, but this court still found harmlessness because the district court focused on other valid factors. Lopez-Soria also relies today on Ibarra as the only case supporting his point of view, that's reviewed on plain error. But again, Ibarra is not like this case. In Ibarra, the district court—the mistaken facts there were that there was a victim in the case and that the defendant had manufactured controlled substances when neither of those things were true. Unlike Ibarra, where the erroneous facts went to the heart of the district court's assessment of the defendant's culpability, we just don't have that here. The district court did not hold Lopez-Soria accountable for some imagined unlawful conduct. It fully adopted the PSR, it accounted for its criminal history. The only mistaken fact as to his criminal history was, at best, as to the timing of his crimes. But as the record bears out, it was the fact of his lengthy crime that was the basis for the district court's sentence, not merely just the sequence of it. In his brief, Lopez-Soria also relies heavily on a case in this court, United States v. Maldonado, to argue that this case should be remanded. But that case, again, is distinguishable in several key respects. First and foremost, it's a preserved error case where the defendant did object and the court merely noted the objection without further comment. And so it was the government's burden to prove harmlessness in that case. And second, and I think notably, the government declined to carry its burden in that case and agreed that remand was appropriate because the mistaken fact, it was unclear as to whether the mistaken fact did affect the sentence. And that's because it was the only factor that was mentioned at sentencing. The district court provided no other rationale and no other explanation for its sentence. Here, again, we have a highly distinguishable instance. I want to note that this is also an easier case than United States v. Williams and Garcia-Servin and Amaya-Argueda because it's a combination of all three. The district court here provided a fulsome 3553A analysis, like it did in Williams. It focused on the instant illegal reentry offense, just like it did in Amaya-Argueda. And it focused on specific convictions that it thought were particularly aggravating, specifically the three controlled substance offenses and the escape offense, just like the court did in Garcia-Servin. So for all of these reasons, Lopez-Oria cannot prove that had the district court noted that there were two and not three removals and had the district court noted that there was a brief period of time where he was not arrested or convicted of an offense other than the legal reentry itself. These do not show, he cannot prove that these, had the court noted that, that there would be a reasonable probability of a lesser sentence on remand. And unless the court has any other questions. Any other questions? Looks like we don't. The government would ask that this court affirm.  Thank you. Ms. Vega, you have five minutes for rebuttal. Yes, Your Honor. Again, the burden of Mr. Lopez-Oria here is to show a reasonable probability. He does not need to show that the clearly erroneous facts were the only facts in the sentencing calculus in order to carry his burden there. The government stated that the district court had a fulsome 3553A analysis. I agree. In that analysis, three times at least, I would argue four, but at least three times, clearly erroneous facts were mentioned. The only fact that was mentioned as, quote, even more concerning for the district court was the erroneous belief that each of the three times that Mr. Lopez-Oria had reentered, he had engaged in additional criminal conduct. And lastly, with respect to one of the three factors, they were the only facts that were cited by the district court. The government is wrong that I only have United States v. Ibarra. As I stated in my initial presentation, there are two cases. They are out of circuit, but they are still persuasive. Gonzalez-Castillo and Corona-Gonzalez, they are cited in my briefing. One's out of the Seventh Circuit, one's out of the First Circuit. Gonzalez-Castillo is actually on all fours with this case. It's an illegal reentry plain error case, number one. Number two, the defendant there received a top-of-the-guideline sentence, and the sentence here was anchored at the top of the guidelines. Number three, there were repeated references to the erroneous facts there. There it was twice. Here we have, as I stated, at least three times. And number four, the district court there had stated that deterrence was a, quote, salient factor. The erroneous fact had been that the district court erroneously believed that the defendant had been removed two times in a two-year period. Well, here we have an erroneous belief that the defendant was removed three times in a five-year period. And, again, we don't have the word salient, but we have the phrase, quote, even more concerning in the record. Corona-Gonzalez is also a clearly erroneous sentence, or a sentence based on clearly erroneous facts, because that is the error. The error is not that the district court believed there were three removals when there were two. The error is not that the district court thought that there was a commission of crimes each time that he returned. The error is the selection of the facts. That is a due process violation. United States v. Tobias from this court makes that very plain. It is a due process violation to select a sentence based on clearly erroneous facts. So these facts need to be considered cumulatively and together when analyzing the sentencing colloquy. In Corona-Gonzalez, there were three references to the erroneous facts. That was enough on plain error for the Seventh Circuit to find an effect on substantial rights. United States v. Hatley, I just want to briefly talk about that case. That case also makes it clear that you have to take the district court's sentencing justification at its word. You do not engage in speculation. The question is not whether a district court could have imposed a 86-month sentence just based off of the criminal history that we've talked about today. That's not the question. The question is whether the court did. And to do that, you cannot speculate. You have to look to what the district court stated. And as I've said, it is a fulsome 3553A analysis at least three times. Let's assume you're correct that there are two errors here. Would they have changed the guideline range? In other words, if the district court said, oh, you're right, there's only two illegal, two removals, not three. And, oh, you're right, there is a 10-month period where he wasn't possessing meth and cocaine. Would that have changed the guideline range? It wouldn't have, Your Honor, but the district court disciplined reliance on the guidelines. It stated that it was anchoring the sentence at the top, and then it said, actually, the guidelines don't even matter to me. So we're talking about the 3553A factors. There are three that the district court noted. And for one of them, the only facts that were noted was the repeatedly reentering and the erroneous belief that each time that he reentered, he engaged in criminal conduct. So I am showing a reasonable probability based on the district court's own words here. And, yes, there are cases that don't go my way, but this is a fact-intensive, record-specific inquiry. And here I've got the record to show that there's a reasonable probability of a lesser outcome because the district court said so. Are there any further questions? No, thanks. Thank you. Thank you, Your Honor. Thank you, counsel. The case is submitted.